***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer and briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Kim L. Cramer.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. On March 10, 1997 and November 20, 1997, the dates of the alleged injuries by accident giving rise to these claims, the parties were subject to and bound by the North Carolina Workers Compensation Act.
2. On those occasions, an employee-employer relationship existed between the Plaintiff and the employer, Ingles.
3. On those occasions, the employer was self-insured.
4. Plaintiff's average weekly wage is subject to verification.
5. The parties submitted medical records which were attached to the Pre-trial Agreement and received as evidence.
6. The issues before the Commission are as follows:
 (a). Has Plaintiff sustained an occupational disease or injury by accident?
 (b). Are her current disability and medical problems related to her occupational disease or injury?
(c). If so, what benefits are due?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is employed by Ingles Markets, and has been working as a clerk and cashier in the health and beauty aid department for several years. Her duties include ordering the items sold in this department such as shampoo and other health and beauty supplies, and keeping these items stocked and neat and orderly on the shelves. The cashier duty involves pulling items across the scanner, so they are rung up on the register, bagging these items, and placing the bags in the grocery cart.
2. Plaintiff generally orders items from the warehouse on Fridays. She uses a hand-held device to record the items needed, and it takes her about three hours to take a count and finish her order. After the items arrive from the warehouse, she restocks the shelves. Items usually arrive on Monday evenings and Plaintiff restocks the shelves on Tuesday mornings. When not performing these duties, Plaintiff works as cashier.
3. On March 10, 1997, Plaintiff was working in the stock room, removing items to be stocked on the store shelves. Plastic totes filled with beauty aids were stacked on a pallet over her head. When she cut the plastic strap holding the totes, a stack of these totes fell onto her and knocked her down. She was dazed, but it does not appear that she completely lost consciousness.
4. Plaintiff's accident of March 10, 1997 was accepted as compensable by the Defendants in I.C. No. 698053 and benefits have been paid. The Form 28B completed by Key Risk shows that Plaintiff was paid temporary total disability benefits from March 11 through April 7, 1997. Medical benefits totaling $3,382.63 were also paid.
5. The Form 60 filed in I.C. claim No. 698053 shows an average weekly wage of $290.00 and a compensation rate of $193.34.
6. Following the accident of March 10, 1997, Plaintiff was taken by EMS to the emergency room at Memorial Mission Hospital. She was examined at the ER by Dr. Stacie Horine. The EMS staff noted that Plaintiff had eye fluttering and as both they and Dr. Horine observed, it does not appear that Plaintiff was knocked unconscious.
7. At the emergency room, Plaintiff complained of low back and right hip pain, which were consistent with muscle strain. Dr. Horine found that Plaintiff had discomfort with motion, but a full range of motion. Dr. Horine ordered x-rays of the cervical spine and a CT scan of the head. The cervical spine x-rays were negative and the CT head scan was normal. Dr. Horine referred Plaintiff to Dr. Joseph Dement, an orthopaedic specialist, for follow-up.
8. Dr. Dement treated Plaintiff beginning March 19, 1997, and last saw her May 14, 1999. Plaintiff's initial complaints were of back pain, which were consistent with a muscle strain from her accident. Dr. Dement treated her with anti-inflammatory medicines and muscle relaxants. He took her out of work until March 31, 1997, when he released her to return to full duty except for the restriction of no lifting over twenty pounds.
9. As a result of her back pain and lifting restrictions, Plaintiff was temporarily assigned more cashiering work and less stocking. The cashiering required that she pull the grocery items over the scanner, bag these items and then place these bags of groceries back into the grocery carts. This required lifting from less than 5 to up to 25 pounds for a bag of dog food.
10. Plaintiff began experiencing numbness in her left hand with left elbow pain and stiffness and some tingling in her right hand. She felt that her activity, especially cashier work increased her symptoms. She first reported these symptoms to Dr. Dement at her office visit of May 28, 1997.
11. At her follow-up visit on November 20, 1997, Plaintiff reported ongoing problems with her hands with significant numbness in both hands. Dr. Dement found positive Phalen's and Tinel's signs on both hands and assessed bilateral carpal tunnel syndrome. He ordered nerve conduction studies, which were done in January 1998 by Dr. Duff Rardin and which supported the diagnosis of bilateral CTS.
12. It is Dr. Dement's opinion, and the Full Commission finds as fact, that Plaintiff's employment, with her increased duties as a cashier, was a significant contributing factor to her development of carpal tunnel syndrome. Although Plaintiff had pre-existing factors, which may have contributed as well, such as her smoking habit, her work duties placed her at an increased risk of developing carpal tunnel syndrome.
13. Dr. Dement performed CTS releases on both wrists. The left wrist surgery was done on July 2, 1998 and the right wrist surgery was done on October 29, 1998. As a result of these surgeries, Plaintiff was unable to perform the duties of her employment from July 2, 1998 through August 10, 1998 and again from October 27, 1998 to approximately November 26, 1998. She has subsequently returned to the duties of her employment with Ingles and continues to work as a cashier and stock clerk.
14. Both Dr. Dement and Dr. Lorraine Doyle, a hand specialist who has assessed Plaintiff, agree that she should not do heavy lifting at work, which would appear to be in excess of 30 pounds. She can continue her work as a cashier and stocker, which allows her to vary her duties and reduces any risk of ongoing problems with CTS. Both physicians have advised her to quit smoking, but Plaintiff has not taken this advice.
15. Plaintiff has recovered pretty well from the CTS surgery, though she still has some residual pain. Dr. Dement has not yet made an assessment of any permanent impairment rating to her hands. Although he expressed some concerns about possible RSD, the medical evidence does not support a finding that Plaintiff suffers from RSD.
16. At the request of the Defendants, Plaintiff was also evaluated by Dr. Kristin Gowin, a specialist in internal medicine and rheumatology. Dr. Gowin found that Plaintiff had consistent complaints of pain in the left side of her body, her back, left leg, left arm and hand pain. Dr. Gowin also found tenderness in both arms, which was not specific for any nerve distribution. Plaintiff was positive for 10 of 18 trigger points for fibromyalgia.
17. It is Dr. Gowin's opinion and the Full Commission finds as fact, that Plaintiff has developed fibromyalgia and myofascial pain, which is an unexplained regional pain, as a result of her accident of March 10, 1997. These conditions were aggravated by Plaintiff's work as a cashier and stocker. Dr. Gowin did not take Plaintiff out of work and these conditions do not prevent Plaintiff from carrying out the duties of her employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On March 10, 1997, Plaintiff sustained an injury by accident arising out of and in the course of her employment with the Defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury by accident of March 10, 1997, Plaintiff sustained lower back and hip strain. N.C. Gen. Stat. § 97-2(6).
3. As a consequence of the March 10, 1997 injury by accident, and the duties she performed following the accident, Plaintiff developed bilateral carpal tunnel syndrome, an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13).
4. As a consequence of the March 10, 1997 injury by accident, Plaintiff also developed fibromyalgia and myofascial pain syndrome. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff has incurred expenses for reasonably necessary medical treatment for her back and hip strain, the carpal tunnel syndrome and the fibromyalgia and myofascial pain syndrome. Defendants are responsible for payment for all such reasonably necessary medical expenses. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. As a result of her injuries and her bilateral carpal tunnel syndrome, Plaintiff was unable to earn wages in any employment and was temporarily totally disabled for the following periods: March 11, 1997 through April 7, 1997, July 2, 1998 through August 10, 1998 and again from October 27, 1998 to November 26, 1998. Defendants have paid Plaintiff compensation for the first period, but are responsible to pay Plaintiff for the two periods of disability related to her carpal tunnel surgeries. Defendants are responsible for paying Plaintiff compensation at the rate of $193.34 per week for these periods. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by Plaintiff for treatment for her back and hip strain, her bilateral carpal tunnel syndrome, including the surgeries performed by Dr. Dement, and her treatment for fibromyalgia.
2. Defendants shall pay Plaintiff compensation at the rate of $193.34 per week for the periods from July 2, 1998 through August 10, 1998 and again from October 27, 1998 to November 26, 1998. These benefits having accrued, shall be paid in a lump sum subject to the attorney's fee.
3. An attorney's fee of twenty-five percent of the compensation awarded to Plaintiff herein is approved for Plaintiff's counsel.
4. Defendants shall pay the costs, including all expert witness fees previously assessed.
This 18th day of December 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER